Good morning everyone, it's nice to see everyone back in the courtroom. Our third panelist, Judge Caney, is observing today's oral arguments and will participate in deciding each appeal but is unable to be with us. We'll begin with our first case of the morning, No. 21-2447, Patrick Cage v. Tiffany Harper. Ms. Major, good morning. May it please the court, good morning, Ruth Major on behalf of Patrick Cage. Your Honor, today we're here seeking to have summary judgment in favor of the defendants on all counts reversed. The decision to deny summary judgment on Mr. Cage's due process claim reversed. In the order of the lower court denying Mr. Cage the opportunity to amend his complaint to have that reversed. I'd like to start with the Ethics Act. And before I start, I want to just give a short recap. My client was the general counsel for a state university for almost eight years, served under four presidents, consistently received positive exemplary feedback, performance reviews. In 2017, and I'm sorry, I just want to start with the structure. Mr. Cage was general counsel to the university. The university is a separate legal entity from the university board under state statute. The board has its own general counsel. Mr. Cage reports to the president of the university. The president of the university reports to the board. So Mr. Cage is beneath the board and his responsibility is at the university level. He acted as parliamentarian, though, did he not? Yeah, exactly. And in the limited function of calling, you know, the meetings to order, that type of procedural thing, he did not get involved in conflict of interest matters. He did not counsel the board behind closed doors on, he wasn't even privy to what went on. He didn't get involved at all in matters of bylaws, things of that nature? He did not. He did not. He never counseled them on any of the bylaw issues. And he never counseled them on conflict issues. And in fact, he was not in the board at all. He was not in private session, you know, executive session in 2017, except when invited for very limited purposes. He was not the general counsel. In 2016, the general counsel, they had a long-term, the board had a long-term general counsel. That general counsel left, I'm not sure exactly why, and there was a period where they had no general counsel up through the end of 2016. And Mr. Cage would help out on an ad hoc basis when they would ask him, hey, what about this? What's that? That kind of thing. But he was not the general counsel. He's never been paid. The general counsel has a contract for the board. He's never had a contract. He's never been paid. He never was the general counsel. In December of 2016, the chairman had a discussion with him, I think the other board members were present, in executive session and told him that there were no plans to make him the general counsel. Maybe one day, you know, it wasn't ruled out, but he wasn't the general counsel. In early 2017, it was clear he wasn't the general counsel. In fact, one board member told him, I don't have to listen to you. Another board member testified. He didn't even know who Patrick was. Where will we find that in the record? Well, it's cited in our briefs, but I can find the specific pages when I sit down, Your Honor. Oh, that's all right. Okay. It is in our briefs. What's the sources, though? Who's testifying? Okay. So, we have the transcripts from the executive session where one of the board members, Patrick Gowan, said, you know, I can do my thing, I don't have to listen to you, in reference to Patrick Cage. We also have the testimony of Chairman Hatch when he was deposed, and he said he didn't even know who Patrick was. He wouldn't be discussing things with Patrick. He didn't know who he was. That's the language he used. So, he was not the general counsel. He was counsel to the board. So, that's the structure that we're working under. Now, with regard to the, I'm going to take one claim at a time. With regard to the Ethics Act, the big problem here is that the cardinal rule, and that's the terminology the Seventh Circuit has used, in statutory construction is what is the plain meaning of the terms that aren't defined in the statute. We presented the court with Webster's definition of rules. The lower court interpreted the statute considering every single possible extraneous source other than the common definition of rules. It was too broad for him. He wouldn't consider that. So, because of that, there's a lot of kind of, you know, hodgepodge of things that happened here, and it's not consistent with what the Illinois Supreme Court has said, and what the Supreme Court, and what this court has said about statutory interpretation. Of course, in this case, it would be what the Illinois Supreme Court had stated. Exactly. That's exactly right. And the difficulty is, they haven't said an awful lot, have they? Well, they have said that when interpreting a term that is not defined in the statute, you start with using the common meaning of the, and that's cited, too, in our briefs. That is the same as the U.S. Supreme Court and this court. The other, you know, some of the other things that the court did, it applied, for example, you know, citing, not to any case law, but citing to Justice Scalia and Brian Garner's books, Reading Law, the Interpretation of Legal Text, excellent book, but he cited to that for the proposition of the associated words canon. The associated words canon is applied when you have two competing common definitions that can't be reconciled. It, you first start with the ordinary meaning, and if there's an ordinary meaning of a term, that's what's applied. And that, you don't go to these other, some of these other canons. You always start with the ordinary meaning. One of the issues that the district court had was, because as I read its opinion, it wasn't that it was ignoring the broader dictionary definition of the term rule. I mean, it considered it. It just rejected your proposed construction. And I think one of the factors that really animated the district court's analysis was it saw, these are my words, not the district court's, a lack of a limiting principle. Said that if a rule includes everything, this, the scope of this statute would be very, very broad, almost allowing for absurd results. And that's where in the district court's opinion, and you know it as well as I know it, he gave the examples of, well, there's all kinds of rules. There's rules about dress codes. There's rules about parking, you know, et cetera. And in your brief, in your reply brief, near the end of it, you acknowledge that, but you don't do much to grapple with it. Well, Your Honor, the Illinois legislature knows how to limit the definition of rule when they want it limited. If you look at the definition in the Illinois Administrative Procedure Act, they were very specific and limited. Okay, very specific. And they also know that when they don't define it, and when they don't limit it, they know that courts are going to apply the common meaning. Our role, the court's role, our role as litigators is to look at what is the common meaning, because without a definition, that is what the legislature's meant. They used rule, they didn't limit it, they could have, like they did in the Administrative Procedure Act. These bylaws of the board, it did strike me rather odd that ethics matters would be in the bylaws, as opposed to something a little bit more stable. Is there any statute or regulation in the state of Illinois that governs the ethics? There is. There is. And what does it say? It has essentially the same language we cited to it in our appellate brief. It's the Chicago State University statute, and he testified in his deposition, he raised that issue too, and that part of the transfer was provided at the lower court. What statute gives the board the ability to write bylaws? Well, that's under the Chicago State University Act, and the Chicago State University Act provides for the authority to enact bylaws, and it also prohibits the kind of self-dealing that went on here. This was a case where a board member in private sessions was lobbying for a paid position with the university, showing a PowerPoint presentation, you know, trying to get... So, the university's enabling statute that Judge Ripple is asking you about, the district court discussed and said that it authorizes the board to make, quote, rules, regulations, and bylaws. Correct. Right. So, one of the points the district court made, I mean, you may not find it persuasive, is that the Illinois legislature there is distinguishing between a rule and a bylaw. Well, Your Honor... They can't... There's no reason to write rule or bylaw if a bylaw is a rule. Well, yes, but see, the problem with that, Your Honor, with all due respect, is that the Ethics Act is a separate statute, and it covers all types of entities, public entities, and if we're going to look for the definition of the Ethics Act... But that's a two-way street, isn't it? So, if the criticism of the district court's methodological approach is looking at the enabling statute, you can't then look to the APA, right? It goes in both directions. In other words, we've either got to stay within the Ethics Act, or we've got to open up the Illinois Code. Right. It's a two-way street, though, analytically. Right. I'm not... Our position is that the rules of construction of a statute is you apply the common meaning. That's the rule. And what I'm saying, though, is just, for example, we know that the Illinois legislature knows how to define rule when they want to. They know how to narrow it when they want to. They didn't do it here. And for anyone to say, well, they didn't do it, but they must have wanted to, or let's assume they did, or let's read that into the statute, that's not consistent with the Illinois Supreme Court law on how to interpret its own statute. So, what's the best you can do with the limiting principle concern? I'm sorry? The district court's limiting principle concern. The point about dress codes in parking places. Well, Your Honor... So, I know what you say in your reply brief is it's not this case. And we shouldn't entertain random hypotheticals or something. But his point was not to do a moot court or anything, but rather to say, could it possibly be the case that the Illinois legislature was going to authorize a cause of action under the Ethics Act for alleged retaliation about complaining of someone's dress code or where they parked or what have you? I mean, it's a fairly serious observation. Well, Your Honor, where do we draw a line then? Where do we draw a line? So, we're going to take the word rule... Wasn't that his exact point? Well, I'm drawing it with the common meaning of rule because that's what the Illinois Supreme Court said. The common meaning picks up a dress code complaint. Well, it very well may. And if that's how they've defined it, there's nothing absurd about that. If somebody gets fired for reporting a violation, if the Illinois legislature has wanted to... They could very well want a very expansive rule because they want to make sure that the important things are caught by not limiting it. So, look here, for example. This bylaw involved public corruption. It said you can't self-deal. So, we're going to look at this and say, let's not follow the common meaning that the Illinois legislature obviously intended because that's the law. Let's limit it. Let's just limit it. And if we cut out some acts of corruption, so be it. We're at least not going to pick up the dress code. And that's just not the way it's supposed to be interpreted under the law. Ms. Major, could I invite your attention to an antecedent problem with the Ethics Act issue here? Sure. That is, was there a disclosure? It sounds like this information is in the public domain. I didn't mean to interrupt you, Your Honor. Go ahead. The fact that Mr. Vallis was lobbying for a paid position and Governor Rauner was supporting him in that effort was a matter of the public record. That this violated the law and the bylaws was not a matter of public record. And that's what Mr. Cage shared at a private lunch at an off-site restaurant and through a letter from his attorney. Are the bylaws public? The bylaws themselves are public, yes. But he wasn't sharing the bylaws. He was sharing the connection of, hey, this conduct is violating these bylaws. And that's the information he was sharing. And there's lots of issues. And I know I have limited time. But if you look at, for example, the court cited to the, it disregarded that other parts of the statute, tried to justify it. Other parts of the statute specifically referenced the Illinois. So you're supposed to say, well, when the legislature references the Illinois Administrative Procedure Act as a condition for a rule in one section, the implication is it's not intended. The rules, you don't say, well, they mentioned it here. They didn't mention it here. But let's just throw it in there. No, I think we got your, you can use your time how you want it. You're coming up into your rebuttal time and you've got some other issues. Okay, yeah, let me move on. So the due process claim, there are two contracts. There's the regulations. There's the employment contract. There's no provision that the employment contract supersedes the regulations. The court essentially said that instead of what the normal law is that one contract only supersedes another if the language is in there. The court handled it just the opposite way and said, unless you say it doesn't supersede, it does supersede. And that's just not the law. Moreover, the offer letter incorporated by reference, the regulations. I don't want to eat into your rebuttal time. We can go a little bit over, but I do have a question about this. Sure. And that is, do you have the offer letter right there? You probably know it by heart by now. I got the important language in there. All right, so if you look at the first, the second paragraph of the letter. Okay, I know that's not the paragraph that's at issue. The one that deals with vacation pay or annual leave and sick days. It seems to me that that paragraph unquestionably incorporates the regulations. Right. Okay, and the reason is just because of its language. And the only possible reference, you know, when it says to which each administrative employee is entitled, such as annual leave, et cetera, the only thing that could possibly reference are the regulations. Right. And the terms there mirror for annual leave and sick leave what's in the regulations. Right. As of day one of employment. Right. Okay, when you jump down, though, two paragraphs, the language is altogether different. There is no reference to, you know, the administrative termination pay to which an employee is entitled. And indeed, the six months is broader. It's more than the three months your client would have otherwise been entitled to. Right. So my point with that is wasn't the district court right? That this is selective incorporation. Well, even if you don't agree that it was incorporated, this is see. It was in part. Okay, well, even if you don't consider it wholly incorporated as to the entire agreement, even if you were to assume that, this is not a case where what's being incorporated isn't in and of itself a standalone contract. Okay, the regulations are contract under Illinois law. So even if they didn't incorporate it into the contract, he still had contractual rights under the regulations that were not superseded by this contract. So he has one contract. A contract doesn't supersede another contract unless it says it is. Unless it says it is. This contract doesn't. The court looked at it just the opposite way. He said I'm not going to recognize two contracts here unless the contract says it's not superseding. It's just the opposite. So if he was terminated in month two of his employment, you would say he's entitled to six months of termination. Exactly. Okay, and if he's terminated, what, six years out or something? Yeah. You would say then we go to the regulations. He gets one contract, gives him more severance pay in later years. One gives him more in earlier years. And none of them says there's a cap. And we're supposed to read contracts in harmony. We're not supposed to try to find. There's nothing that says he's only entitled to this. And if he gets 12 months, he's getting six months because six months is included in 12 months. So Mr. Cage had two contracts. His offer letter didn't supersede the regulations. And under his second contract, the regulations, he was entitled to 12 months. And, moreover, we should have been allowed to amend, and that's one of the other issues. That is essentially an affirmative defense. He is clearly covered under the regulations, which would create a property interest. What they're essentially saying is the offer letter supersedes that, which is an affirmative defense. And it was never identified as an exhibit. It wasn't raised on the motion to dismiss. We were sandbagged. We were sandbagged with it. I don't know. I don't know. It's very, very counterintuitive, I must say, in an employment dispute, in an employment case, for the plaintiff to say, I'm surprised that you're talking about my employment contract. When there's two contracts. We'd say, isn't it the, what else would we be talking about? The regulations are a contract, too. He has two contracts. He has two contracts. Right, but I don't know how he can express surprise that his adversary in an employment dispute is talking about his employment contract. He's surprised that he's using the employment contract as affirmative defense, having never disclosed that document in Rule 26 disclosures as a document that's evidence for their claims. That's the whole point of Rule 26. If litigators can't rely on people to disclose, their opponents to disclose a key critical document to their defense in a Rule 26, I'm not sure why we have Rule 26. Okay? Okay. How about we do this? You've exhausted your time. How about we turn to your adversary, and I'll give you three minutes for rebuttal. Sure. Is that okay? I did want the First Amendment, but I can do that in my rebuttal. Thank you, Your Honor. Okay, very well. Mr. Perlman, good morning. Good morning, Your Honors. May it please the Court. My name is Stephen J. Perlman. I am counsel for the defendant at Belize. We respectfully submit that this Court should affirm Judge Seeger's grant of summary judgment on the claims at issue and the denial of the leave to amend the complaint. To give you a brief roadmap, I will first address the Ethics Act claim, then I will address the First Amendment claim, then the due process claim, then the motion for leave to amend. With respect to the Ethics Act claim, the denial of this claim, the rejection of this claim, should be affirmed for several reasons. The law is clear that you need to have a complaint blowing the whistle about a law, rule, or a regulation. Failure to do so, as was the case here, means that there's no viable, tolerable claim under the Ethics Act statute. Yes, rule is undefined in the Ethics Act statute, but it's quite apparent that the term means something that's the byproduct of formal rulemaking. There's the limiting principle. Can I ask a threshold question? One of the points that Ms. Major effectively makes is this is an extremely counterintuitive result. You have the general counsel of a public university complaining that a member of the board was conflicted under a provision of the bylaws, and yet the outcome that you're advocating for is that was not an alleged violation of a rule. Very counterintuitive. I understand that you're going to say, well, we've got to interpret it, etc., but can't you at least give her that? Well, Your Honor, the conflict of interest issue that's raised is something that's under the bylaws. It's not a matter of law. It's not a matter of regulation, and she doesn't cite to a law or a regulation. Is there a law or regulation that would have prohibited that kind of conduct? I'm not aware of one. There was nothing in the briefing that said that this was a matter of law. Had that been the case, presumably counsel would have argued that he was complaining of a matter of law. Now, I take Your Honor's point. I understand that you may look at this in the first instance and say, well, could a violation of a bylaw be serious? Could it be a serious issue like corruption, for example? But there's no law that plaintiff has cited to and no regulation that the plaintiff has cited to. They simply cite to the bylaws, and here's where it becomes truly problematic. You don't have a limiting principle. The bylaws say, for example, that you can't have a meeting in the wrong building. Let's say Mr. Cage's complaint was there was a violation of the bylaws, and, you know, somebody wasn't giving me the right amount of time to speak, and so I'm going into federal court, and I'm going to take up Judge Scudder and Judge Ripple's time and Judge Cain's time talking about, well, this meeting should have occurred at a certain time and a certain place. That's not the kind of thing that a whistleblower provision in the Ethics Act contemplates. I think that's a bridge way too far, and I think that the bottom line is we open the floodgates to scores of trivialities. That's the case with Snow. The Snow case had an employee running around posting flyers in the bathroom saying there's a violation of the parking provisions, and the Illinois court, the only case that has addressed this particular issue, said that is absurd. That leads to complaints about trivialities. So without any sort of a limiting function, and I don't mean to be disregarding Judge Scudder, your point that, you know, it is an issue, you know, that there is a conflict of interest, but that just appears in the bylaws. So it's simply not actionable. It's more atmospheric, if anything else. I think that it's important to look at Snow because Snow is the only Illinois case that addresses this particular issue. And you have to avoid the absurd results here when we're looking at policy formation. The limiting principle that's articulated by Snow, and counsel respectfully did not provide any sort of limiting principle. I think she ultimately said, yeah, you're right. There should be a cause of action for violations of the dress code. That's an absurd result, we would respectfully submit. I think that looking at Snow, it's really difficult to overcome the court's rationale there. It's saying that you need rulemaking that's formal with notice and a period to comment. That's what a rule is. Otherwise, somebody could have a cause of action because of wearing open-toe shoes in a formal environment. And I don't mean to be too loose, but I do think that you don't have a limiting principle here. Also, the rules need to be outward facing. And there's no limiting principle that would be presented by counsel that undermines that. I'd also note that there are multiple sections in the Ethics Act that are entirely and fully consistent with what I'm telling this court. If you look at the Ethics Act's provisions for the promulgation of rules pursuant to the Illinois APA, the Executive Ethics Commission and the Auditor General have to adopt emergency procedures pursuant to the Illinois APA. Secondly, to Judge Ripple's point earlier on, there was no disclosure here. That's the only realistic conclusion. Mr. Cage claims that he learned in a newspaper that there was a conflict of interest. And so he went to the chair of the board and provided legal advice to his chair that there was a potential conflict of interest issue. This is in the public domain. This is not a new fact that he's bringing to anybody's attention. What's more, to even fortify that point, is the record establishes that it was Dr. Hatch who told Mr. Cage that there was a potential conflict of interest issue. So there is no disclosure. And the third is we would respectfully submit that Mr. Cage's alleged protected activity didn't contribute to his protected activity. And there's two reasons for this. Pardon me. Number one is that Dr. Lindsay is the only person with authority to terminate Mr. Cage's employment. That is absolutely clear in the record without exaggeration and without hyperbole. Number two, the record is equally clear that Dr. Lindsay was in the dark. She did not know that there was any sort of protected activity. If I may jump to the First Amendment claim, I recognize counsel said that she wanted to address this in her rebuttal, so I'll mention it briefly. Mr. Cage is not John Q. Citizen reporting to a newspaper that there was some sort of untoward or unlawful conduct. He's talking to the chair of the board. And counsel's representation that Mr. Cage didn't go into private sessions. Hold on. When you say talking to the chair of the board, tell me what you're referencing. Are you talking about this meeting? The Leona's lunch meeting. Meeting in a restaurant or something? Yes, sir. Yes, yes, Your Honor. He went to Mr. Hatch. Dr. Hatch, he went to him, who's the chair of the board, in a private meeting and said, reportedly said, hey, look, there's a legal issue here. Well, that's not John Q. Citizen reporting to the newspaper. Didn't Dr. Hatch, though, say, I don't remember him saying anything like that? Dr. Hatch? Yeah. Dr. Hatch actually said to Mr. Cage, there is an issue with Mr. Vallis running for interim president. It wasn't vice versa. The representation that counsel's making to the contrary is not borne out by the record. I know there's a con. Parties disagree on that. Right. I got it. Right. But ultimately, I think it's important to recognize that Mr. Cage himself testified what his primary duty was. And it's intuitive. It's to reduce and eliminate risk to the university. He also has this employment agreement, the offer letter that Judge Scudder, you had referenced. And in paragraph, I'm sorry, in the offer letter itself, it makes it abundantly clear that his responsibility, this is paragraph three, is to deal with issues of employment law and monitor and resolve disputes that could lead to litigation. Just so here. The conflict of interest implicates employment issues, namely whether Mr. Vallis could be the university's president. Mr. Cage routinely attended board meetings. And he went into private sessions. And you know what he did in those private sessions? He gave litigation reports. And when you give a litigation report in a private session. Where's that at in the record? That fact? I don't need a specific. Who said that? Mr. Cage. It's Mr. Cage's testimony. And he says that unequivocally. I'm not by any means stretching when I make that representation to the court. ECF 283-3 is Cage's deposition. That's the summary judgment motion that we had submitted. And what do you do in private session when you're a counsel to the university? The highest level counsel. You talk about strategy in the litigation. You talk about risk. You talk about exposure. You talk about policy. And you talk about ways of resolving litigation. And that's how you know that there's an attorney-client relationship. Between the board members and between Mr. Cage. Look at Gowen's testimony. Gowen says, I believed the entire time that the general counsel was providing me with legal advice. And that's not some sort of an aberration. Every declaration that was submitted in support of summary judgment stands for that proposition. I would also submit further that the CSU enabling statute requires a suit against the university to be brought against the board. Case in point, look at the caption of this particular case. University isn't named. Board is. Third, to reference Judge Ruppel's point earlier, Mr. Cage is the board parliamentarian. And he needed to enforce Robert's rules of order. There is a conflict of interest provision that's front and center in Robert's rules of order. This fell within his responsibilities. One point that I was inclined to ask Ms. Major about that you're not making, but I'll put it out there. She can respond to it if she wants. Is I read, maybe mistakenly, but I read the April 6, 2017 letter. Which came through his counsel. I understand that. But it was written in his capacity as general counsel. And it proceeded over the course of multiple pages to outline an alleged legal violation. And then put or lodge a request for a litigation hold that way. And it's written, it's communicated under a highly confidential header. Seems very hard not to read that as a communication from a general counsel to a board. Where it looks like things are on the verge of a falling out. Or there's at least some tension in the relationship at this point in time. I mean, Judge Scudder, you're entirely correct. The only point that counsel is trying to make now to salvage their argument is, well, it wasn't made by Cage. It was made by his counsel. And Judge Seeger rightly said, it's a mouthpiece. That's his agent. It's on behalf of him. So I think that fortifies the point. If I may, I'll turn to the due process argument now. Mr. Cage has no property interest. Oh, and I want to make one more point. Counsel is not making a fair and accurate representation when she says that there was a separate and different general counsel to the board. Okay. There was an outside law firm called Ackerman, which is one that the Chief Justice of the Northern District of Illinois recently went to. The former justice. Lakeisha Marsh happens to be a partner there. She was outside counsel. She advised on matters. There was still an internal counsel that advised the board. If that wasn't the case, I wouldn't have a job. Okay. As outside counsel, everything I do is I report to internal counsel. As outside counsel, that doesn't make me the general counsel. They're using terms far too loosely here, and I think it's misleading respectfully. Now, with respect to the due process clause, throughout this litigation, Mr. Cage claimed only that his due process claim arose from the regulations. But he has no secure property interest in termination under the regulations. It's selective incorporation that you have here. Are there words like governed by that would show that there's a reference to the regulations? Certainly. Of course there are. But the termination provisions that you have at issue here cannot be harmonized. There's no way that they could possibly be harmonized. Because what's in the employment contract that Judge Scudder pointed to in paragraph 4 of the contract makes it abundantly clear that, and Judge Seeger says it in a declarative sense, that you only get six months if you're terminated. Well, he could have asked for more. And there's a plausible, logical result there. Because if he was terminated within less than a year under the regs, he would only get three months. So he's actually getting a better bargain in some circumstances. He may very well have been concerned that he wasn't going to last a full year there. Be that as it may, the termination provisions simply cannot possibly be read in harmony. And I think that Judge Seeger really put out a master class when he talked about principles of Illinois law here for three reasons. There's three principles that he referred to that support the position that a six-month provision in the employment agreement controls. First point, when contractual terms and terms that are incorporated by reference conflict, the intent to incorporate the conflicting terms must be pellucid. They must be obvious. That is not the case here. There's no obvious intent on the face, the very face of the contract itself, to incorporate the termination provisions of the regs. It unambiguously says that Cage will be entitled to six months, period. No other reading is permissible. Second principle that Judge Seeger very aptly pointed out, if the parties wanted to incorporate the termination provision of the regs into the employment agreement, or if they wanted to say that six months was simply just a floor, and then the alternative, if he's terminated later, he could be provided with a different amount of pay, well, why not say that? Cage is a sophisticated employment attorney. He did not provide any evidence whatsoever, based on the face of the contract itself, that there was a suggestion that six months just be a floor. That's what plaintiff's counsel has on a wish list. But that's not the reality. That's not what happened here. The third principle that Judge Seeger aptly articulated is that specific terms apply if they conflict with general terms. That's about as intuitive a proposition as Judge Seeger could have put forward, and it's entirely consistent with Illinois law. The employment agreement is specific to Mr. Cage's termination. It's bespoke. It is Mr. Cage's termination provision, whereas the regulations are like a handbook. They're akin to a handbook. They provide all sorts of information about your FMLA leave or your vacation leave or your sick pay bank. And the only way to read these in harmony and the only right and realistic and just way to read this in harmony is to say if Mr. Cage is terminated, he gets six months, and all of the other benefits and rules that apply to all the other employees of the university would apply to him as set forth in the regulations. If I may, the last point that I'll get to is plaintiffs' argument that they should have been given leave to amend the complaint. There's a discretionary standard that applies here, an abuse of discretion, and I think that Judge Seeger's opinion shows that he was very careful and meticulous throughout reviewing an enormous record that was filled with many discovery disputes, eight different motions for summary judgment, litigation that went on for over three and a half years. And as Judge Seeger correctly points out, there was extreme delay. It's not like you have a situation where it's five weeks after the deadline to amend a complaint or it's a year or it's 15 months. This is 32 months after the deadline to amend a complaint arose. It's also a year after the fact discovery period arose. There's also no unfair surprise. As the court has rightly pointed out, as Judge Scudder rightly pointed out, the very first document that was produced in this litigation was this employment agreement. For Mr. Cage to somehow present himself as a babe in the woods, who's a very sophisticated employment attorney, and say, I really didn't understand, you know, why is this employment agreement being referenced? What does this have to do with this case? I think it's not genuine. I don't want to use hyperbolic words like disingenuous, but it's hard to say it's anything but. You agree your Rule 26 disclosures were deficient? That the Rule 26 disclosures? We strenuously disagree. Would you file the same ones today? I would, and here's why. And I've read the commentary to Rule 26. I've argued this in front of courts a number of times, and the law is very clear. That number one, if you say that any document that's being produced can be the subject of litigation afterwards, that's sufficient. But number two, we went further. CSU also said that any documents that relate to Mr. Cage's termination will be something that will be the subject of further litigation. That was in one of the paragraphs in your disclosure? Yes, that's correct, Your Honor. I think that the thing that is most troubling is Mr. Cage's counsel's argument that we sandbag them. Because in the secure case that Judge Seeger cited, it aptly says, it's not sandbagging if it's your sand and it's your bag. This is the first document that they produced in this case. They can't claim any unfair surprise. And it is work product what we want to do with that document. We as defense counsel don't need to explain our legal theory behind the document. It's the document production itself that's necessary. Otherwise, you give up all your work product at the beginning of the litigation, which is an anomalous result. I see I'm out of time. Thank you very much for your consideration, Your Honors. Okay. Thank you very much, Mr. Perlman. Thank you. Ms. Major, I'll give you—we asked a lot of questions in the beginning there, so I'm going to give you three minutes for rebuttal, if that's okay. I'll talk very fast, Your Honor. Your Honor, I just want to touch on some of the things. In Supplemental Appendix, page 144, there's testimony from Mr. Cage in his deposition where he testifies that he talked about the Chicago State University statute and how it was violated by Mr. Velasquez and the board's conduct. We also cite to the statute, but unfortunately I left it up here, and I couldn't find the citation, but it's in our brief to the section in the statute that says that board members cannot engage in self-dealing. I want to just clarify really quick. The reason the Ethics Act cites to the Illinois Administrative Procedure Act is because those two units that were being developed, the Ethics Commission and the Auditor General, they are both going to promulgate rules under the statute that impact on individuals outside of their government unit. Under the Illinois Administrative Procedure Act, and they're covered under the Illinois Administrative Procedure Act, when they issue a rule, they have to follow that because it's impacting on people outside. It was just allowing them to do emergency rules without having to go through the process. It has nothing to do with the whistleblower section. It has to do with their requirements under the law. Hatch never said that he disclosed to my client that there was a violation of the law or the bylaws. He testified, as Your Honor said, Judge Scudder, he didn't remember what was said. My client testified that he shared that information with Hatch. Now, with regard to the letter, Your Honor, I've never had a relationship with the Chicago State University or with the board. I was representing him in his individual capacity. That's what my contract is with. And we were writing that letter because we believed he had heard that he was going to be terminated. And we have the record to show they were planning to terminate him after he reported the violation. It's in the executive session transcripts. He'd heard from a board member that they were talking about terminating you, and we were writing this to address the retaliation of him in his individual capacity. And, Your Honor, but if you look at the law that we cited, too, in our brief, it can't be some sort of tangential responsibility. The person, it has to be within their ordinary scope in order to not have First Amendment protection. It has to be a responsibility. And I'm going to give counsel the benefit of the doubt because he's brand new to this case. But my client did not represent the board. And in this case, the board and the university have had separate counsel, outside counsel, through the entire case. And they have not cooperated in producing documents together. I've had to subpoena the university to get documents. He never, and that's just absolutely, it's absolutely untrue, Your Honor. Okay? My client did the right thing. And I do ask that the court take a close look at this. And we appreciate your time and your careful consideration. Okay, very well. Thanks to both parties. We'll take the appeal under advisement.